# EXHIBIT A

**2010 WL 4365883**
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

Brian BEARD, Plaintiff-Appellant,
v.
James HORTON, Jr., D.O., and Hastings Orthopedic Clinic, P.C., Defendants-Appellees.

Docket No. 290153.
|
Nov. 4, 2010.

West KeySummary

**1**  **Appeal and Error**⚯**Admission of Evidence**

A surgery patient failed to demonstrate existence of plain error based on alleged inconsistencies in the physician's account of the nerve damage and his purported repair of the nerve, and thus, was not entitled to a new trial on his malpractice claim against the physician. Patient argued that the great weight of the evidence demonstrated that the physician's account of the nerve repair was patently incredible and physically impossible considering his inexperience, his vacillations over the type of suture used, his inconsistent testimony regarding the extent and direction of the laceration, the duration of the surgery, and plaintiff's continuing pain. However, though a few inconsistencies existed, only one statement regarding the type of suture used was shown to be objectively false, and the physician provided an explanation for his belief at the time. Moreover, the inconsistencies did not vitiate the theory that the physician made the nerve repair.

Barry Circuit Court; LC No. 07-000088-NH.

Before: HOEKSTRA, P.J., and FITZGERALD and STEPHENS, JJ.

**Opinion**

PER CURIAM.

**\*1** In this medical malpractice action, the trial court entered a judgment of no cause of action in favor of defendants Dr. James Horton, Jr., D.O., and his practice, Hastings Orthopedic Clinic, P.C ., in accordance with a jury's verdict. The court thereafter awarded case evaluation sanctions to defendants. Plaintiff appeals as of right. We affirm.

This suit arose following the July 2005 carpal tunnel surgery on plaintiff's right hand performed by Dr. Horton. It is undisputed that Dr. Horton inadvertently lacerated a nerve in plaintiff's hand during the surgery. The parties do not dispute that it would have been within the appropriate standard of care for an orthopedic surgeon if Dr. Horton had not attempted to repair the damaged nerve and instead referred plaintiff to a qualified surgeon to make the repair. Plaintiff's theory at trial was that Dr. Horton failed to repair the nerve and, instead of properly referring plaintiff to a hand surgeon, he falsely stated in an operative report that did perform the repair, thereby resulting in permanent disability to plaintiff's right hand. In contrast, defendants' theory at trial was that Dr. Horton was qualified to make the repair, that he properly did so, and that any continuing problems plaintiff had with his right hand were not attributable to any malpractice by Dr. Horton.

The jury found that Dr. Horton did not violate the applicable standard of care and a verdict of no cause of action was entered. The trial court thereafter denied plaintiff's motion for a new trial. After plaintiff filed his claim of appeal, this Court granted his motion to remand to allow him to file a motion for relief from judgment and for an evidentiary hearing based on newly discovered evidence. The trial court denied the motion, rejecting plaintiff's argument that he was entitled to relief from the judgment in the form of a new trial because the surgery on his right hand performed after the trial revealed no evidence that the damaged nerve had been repaired.

I. PLAINTIFF'S MOTION FOR A NEW TRIAL

Plaintiff raises several issues challenging the trial court's denial of his motion for a new trial. We review a trial court's decision on a motion for a new trial for an abuse of discretion. *Barnett v. Hidalgo,* 478 Mich. 151, 158, 732 N.W.2d 472 (2007). An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes. *Id.*

We initially address plaintiff's claim that he is entitled to a new trial because the jury's verdict was against the great weight of the evidence. MCR 2.611(A)(1)(e) provides that a new trial may be granted if "a verdict or decision [is] against the great weight of the evidence or contrary to law." Such motions should be granted only when the evidence preponderates heavily against the verdict or a serious miscarriage of justice would otherwise result. *Ellsworth v. Hotel Corp. of America,* 236 Mich.App. 185, 194, 600 N.W.2d 129 (1999).

**\*2** Plaintiff principally relies on evidence of discrepancies and alleged inconsistencies in Dr. Horton's account of the nerve damage and his purported repair of the nerve and questions the credibility of defendants' expert to argue that the jury's verdict was against the great weight of the evidence. When witness testimony conflicts and testimony supporting the verdict has been impeached, unless it can be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of the testimony is for the jury to decide. *Shuler v. Mich. Physicians Mut. Liability Co.,* 260 Mich.App. 492, 519, 679 N.W.2d 106 (2004) (internal citation omitted). Only in very narrow circumstances may conflicting testimony or questions of credibility constitute grounds for a new trial, such as where testimony contradicts indisputable physical facts or laws, defies physical realities, is patently incredible, or is so inherently implausible that it could not be believed by a reasonable juror. *People v. Lemmon,* 456 Mich. 625, 643-644, 576 N.W.2d 129 (1998).

Plaintiff contends that the great weight of the evidence showed that Dr. Horton's account of a nerve repair was patently incredible and physically impossible considering his inexperience, his vacillations over the type of suture used, his inconsistent testimony regarding the extent and direction of the laceration, the duration of the surgery, and plaintiff's continuing pain. Although we agree that there were apparent inconsistencies and discrepancies with Dr. Horton's testimony, we cannot conclude that the testimony or defense theory was so patently incredible or contrary to physical realities that it could not be believed. The discrepancies regarding the type of suture used, the degree and direction of the cut, and the retraction of the nerve endings could be viewed as casting doubt on Dr. Horton's memory of certain details of the nerve repair, without casting doubt on his assertion that he actually made the repair. The only statement that was shown to be objectively false was Dr. Horton's initial claim regarding the type of suture used to repair the nerve. However, Dr. Horton openly acknowledged the falsity of his initial statement and provided an explanation for his belief at the time. Dr. Horton's initial testimony at trial that he did not know what type of suture he had used can be harmonized with his subsequent determination that he used another type of suture based on the supplies that were available to him. Although there was no explanation for the seemingly contradictory statements regarding the retraction of the nerve endings, this inconsistency does not render Dr. Horton's testimony inherently incredible or contrary to physical realities where defendants' expert testified that the nerve endings more likely than not did not retract because retraction usually does not happen immediately.

Plaintiff's argument concerning Dr. Horton's testimony regarding the extent of the damage appears to be his strongest argument. Our review of the record demonstrates that Dr. Horton did indeed change his testimony related to this issue. Nevertheless, the jury reasonably could have found that Dr. Horton resolved the apparent discrepancy with his explanation that his deposition testimony meant that he cut through the branch of a nerve, rather than the main part of the nerve. In any event, the alleged inconsistencies concerning this matter do not vitiate the defense theory that a repair was made.

**\*3** Furthermore, Dr. Condit testified for defendants that the nerve repair was simple and well within Dr. Horton's surgical competence. He testified that his examination and Dr. Middledorf's findings were consistent with a properly repaired and healed nerve. He did not believe that the nerve would have retracted immediately after it was cut.

For all of these reasons, the trial court did not abuse its discretion by refusing to disturb the jury's verdict. The verdict was not contrary to the great weight of the evidence.

Plaintiff also argues that the trial court failed to articulate sufficient reasons for its decision to deny his motion for a new trial. We disagree. Generally, findings of fact and conclusions of law are unnecessary in decisions on motions unless required by a particular rule. MCR

2.517(A)(4). However, MCR 2.611(F) requires a trial court ruling on a motion for a new trial to "give a concise statement of the reasons for the ruling, either in an order or opinion filed in the action or on the record." In this case, the trial court explained that it denied plaintiff's motion for a new trial because it disagreed with plaintiff's claim that inconsistencies with Dr. Horton's accounts of the surgery compelled a verdict in favor of plaintiff. This statement satisfied the requirement that the trial court provide a concise statement of the reasons for its decision.

Plaintiff also argues that the trial court abused its discretion by deciding his motion for a new trial before the trial transcripts were prepared. Plaintiff contends that the transcripts were necessary to properly argue his claim that the jury's verdict was against the great weight of the evidence. We disagree.

The principal issue at trial was whether Dr. Horton repaired the damage nerve or failed to repair the nerve without advising plaintiff to consult with a qualified surgeon to make the repair. The parties offered differing evidence related to whether Dr. Horton was qualified to perform the repair. Also, plaintiff attacked Dr. Horton's credibility through various means. In addition, both parties presented opposing expert testimony. The verdict depended substantially on the jury's determination of the witnesses' credibility. We do not find the determination of whether the jury's ultimate conclusion preponderated heavily against the evidence required an in-depth analysis of all of the testimony regarding matters such as the availability of sutures, comparative advantages and disadvantages of different kinds of sutures, the choices of surgical instruments, or the degree of skill and experience necessary to repair the nerve. Considering the nature of the case, the trial court's decision to decide plaintiff's motion for a new trial before transcripts were prepared was within the range of principled outcomes, and therefore not an abuse of discretion. Barnett, 478 Mich. at 158, 732 N.W.2d 472.

Plaintiff also argues the trial judge slept during portions of the trial, thereby denying him a fair trial. Plaintiff raised this issue in his motion for a new trial. In denying the motion, the trial judge denied having slept during the trial.

*4 As an initial matter, we disagree with plaintiff's claim that he preserved this issue at trial by commenting on the trial judge's apparent lack of interest during his opening statement. No claim was made during or after counsel's opening statement that the judge appeared to be sleeping, nor did any party claim at any other point during the trial that the judge appeared to be sleeping. Accordingly, this issue is unpreserved and our review is limited to determining whether there was a plain error that affected the appellant's substantial rights. Wolford v. Duncan, 279 Mich.App. 631, 637, 760 N.W.2d 253 (2008).

In Scott v. Angie's, Inc., 153 Mich.App. 652, 663-664, 396 N.W.2d 429 (1986), this Court held that "the presence of a judge at all stages of [a] trial is absolutely necessary to its validity." Plaintiff argues that the trial judge was effectively absent from the trial when he was asleep. Plaintiff relies on posttrial affidavits from himself, the jury foreman, plaintiff's counsel, and counsel's secretary, to support his assertion that the trial judge appeared to be sleeping "several times" during trial. However, a party who fails to object to a judge's "absence" and later claims error on appeal is not entitled to relief absent proof of prejudice. Id. at 660, 396 N.W.2d 429. Our review of the record reveals there was never a contemporaneous objection at any point during the alleged "several" occasions when the trial judge appeared to be sleeping. Thus, we are precluded from properly evaluating this claim, either to determine whether there is any basis for believing that the perceptions of the observers might be accurate, or to identify the portions of trial where the alleged conduct may have occurred for purposes of determining whether plaintiff was prejudiced. In addition, plaintiff does not claim that the judge ever failed to respond to objections or other issues raised by the parties during trial. Moreover, the trial court specifically denied falling asleep during trial when denying plaintiff's motion for a new trial. Under these circumstances, plaintiff has failed to demonstrate a plain error or shown that his substantial rights were affected. Thus, plaintiff is not entitled to a new trial with respect to this issue.

II. PHOTOGRAPHIC AND VIDEO SURVEILLANCE EVIDENCE

Plaintiff also raises several issues relating to defendants' presentation of photographs and a surveillance video obtained by a private investigator hired by defense counsel. The photographs and video depicted plaintiff engaged in various physical activities that allegedly were inconsistent with plaintiff's testimony concerning the extent of his hand disability.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Elezovic v. Ford Motor Co., 472 Mich. 408, 419, 697 N.W.2d 851 (2008).

In addition, an error in the admission of evidence does not warrant appellate relief unless the refusal to grant relief appears to be inconsistent with substantial justice or affects a substantial right of the party opposing its admission. *Craig v. Oakwood Hosp.,* 471 Mich. 67, 76, 684 N.W.2d 296 (2004); MCR 2.613(A); MRE 103(a).

**\*5** Plaintiff's opposition to the introduction of the surveillance materials is largely based on his assertion that defendants failed to accurately respond to interrogatory requests during pretrial discovery. Our review of the record demonstrates that defendant's response to the applicable interrogatory was sufficient to provide notice to plaintiff that an investigation might have occurred. However, plaintiff failed to pursue the matter further, i.e. by challenging defendants' assertion that information related to any such investigation was protected by the work product doctrine. Because plaintiff failed to pursue the matter further, we conclude that, even if admission of the surveillance materials constituted error due to defendant's failure to disclose the evidence prior to trial, plaintiff contributed to this error. It is a long held policy of this Court that a party may not benefit from a claim of error resulting from conduct which the aggrieved party contributed to by plan or negligence. *Lewis v. LeGrow,* 258 Mich.App. 175, 210, 670 N.W.2d 675 (2003).

Plaintiff also emphasizes that defendants' failure to disclose the surveillance materials prior to trial resulted in the proceedings constituting a trial by surprise. As a general rule, pretrial discovery is meant to avoid "trial by surprise." *Grubor Enterprises, Inc. v. Kortidis,* 201 Mich.App. 625, 628, 506 N.W.2d 614 (1993). However, the disputed evidence at issue in this case did not create a trial by surprise because the surveillance materials depicted plaintiff himself engaged in various activities. Even where plaintiff's attorney may have been surprised by this evidence, plaintiff was necessarily aware of his own actions and capabilities. See *Butt v. Giammariner,* 173 Mich.App. 319, 322, 433 N.W.2d 360 (1988).

In any event, we conclude that the surveillance evidence had no effect on the jury's verdict. Here, the jury returned a special verdict in which it determined that defendants were not liable because Dr. Horton was not professionally negligent. The surveillance evidence had no relevance to that issue. Because the evidence did not affect the jury's verdict, any error was harmless. *Ykimoff v. Foote Mem. Hosp.,* 285 Mich.App. 80, 103, 776 N.W.2d 114 (2009).[1]

## III. DISCOVERY VIOLATIONS

Plaintiff next argues that the trial court should have entered a default against defendants because of their numerous discovery violations. Although MCR 2.313(B)(2)(c) authorizes a court to enter a default as a sanction for a discovery violation, such a severe sanction is warranted only in extreme cases. *Schell v. Baker Furniture Co.,* 232 Mich.App. 470, 475, 591 N.W.2d 349 (1998), aff'd 461 Mich. 502, 607 N.W.2d 358 (2000).

In this case, the record discloses that pretrial discovery was contentious, with both sides filing numerous discovery motions. However, plaintiff never requested a default as a sanction for defendants' alleged discovery violations. Further, although plaintiff claims that Dr. Horton testified at trial substantially differently than he did at his deposition, plaintiff's counsel was well prepared to cross-examine Dr. Horton at trial regarding the apparent discrepancies between his trial testimony and prior testimony. Under the circumstances, and particularly in the absence of any request for entry of a default below, the failure to enter a default was not plain error. *Wolford,* 279 Mich.App. at 637, 760 N.W.2d 253.

## IV. DR. RYAN'S TESTIMONY

**\*6** Plaintiff further argues that the trial court erred when it refused to allow him to subpoena a retained defense witness, Dr. Thomas Ryan, to testify as a rebuttal witness, or to present Dr. Ryan's deposition testimony in lieu of his live testimony. A trial court's decision to admit or exclude evidence, including rebuttal testimony, is reviewed for an abuse of discretion. *Chmielewski v. Xermac, Inc.,* 457 Mich. 593, 613-614, 580 N.W.2d 817 (1998); *People v. Steele,* 283 Mich.App. 472, 485-486, 769 N.W.2d 256 (2009).

Rebuttal testimony is used to contradict, explain, or refute evidence presented by the other party in order to weaken it or impeach it. *Winiemko v. Valenti,* 203 Mich.App. 411, 418, 513 N.W.2d 181 (1994). The purpose of rebuttal evidence is to undercut an opponent's case, and a party may not introduce evidence competent as part of his case in chief during rebuttal unless permitted to do so by the court. *Id.* at 418-419, 513 N.W.2d 181. Rebuttal evidence must relate to a substantive rather than a collateral matter, and contradictory evidence is admissible only when it directly tends to disprove a witness's exact testimony. *City of Westland v. Okopski,* 208 Mich.App. 66, 72, 527

N.W.2d 780 (1994).

Dr. Ryan's proposed testimony was largely cumulative of the evidence that plaintiff had already presented. Moreover, those portions of Dr. Ryan's testimony that cannot be characterized as cumulative could have been presented during plaintiff's case-in-chief. Consequently, the trial court did not abuse its discretion in quashing plaintiff's subpoena and disregarding plaintiff's suggestion that he be permitted to read Dr. Ryan's deposition into the record in lieu of calling him as a witness.

V. CASE EVALUATION

Plaintiff next argues that the trial court erred by denying his request to set aside the case evaluation award. Although plaintiff brought a pretrial motion to set aside the case evaluation award, the motion was not based on this same ground that plaintiff now raises on appeal. Accordingly, this issue is not preserved for appeal and our review is limited to determining whether a plain error affected plaintiff's substantial rights. Wolford, 279 Mich.App. at 637, 760 N.W.2d 253.

There is some support for the argument that a trial court can properly grant relief from a case evaluation award pursuant to its authority under MCR 2.612(C)(1)(f) to "relieve a party ... from a final judgment, order, or proceeding" for "[a]ny other reason justifying relief from the operation of the judgment,." See Coolman v. D B Snider, Inc., 129 Mich.App. 233, 239, 341 N.W.2d 484 (1983). However, plaintiff has not shown that he was entitled to such relief in this case. Plaintiff's argument is based on his assertion that defendants presented at trial differed substantially from the defense that they asserted during the case evaluation. Our review of the record does not support this claim. Thus, plaintiff is not entitled to relief from the case evaluation award.

*7 Further, because plaintiff rejected the case evaluation award and did not obtain a more favorable verdict at trial, case evaluation sanctions were mandatory under MCR 2.403(O)(1). The "interest of justice" exception in MCR 2.403(O)(11) did not apply because the verdict did not result from a ruling on a motion after rejection of the case evaluation.

VI. NEWLY DISCOVERED EVIDENCE

Plaintiff lastly argues that the trial court erred in denying his motion for relief from the judgment of no cause of action based on newly discovered evidence.

A trial court's decision to grant relief from a judgment based on newly discovered evidence is reviewed for an abuse of discretion. South Macomb Disposal Auth. v. American Ins. Co., 243 Mich.App. 647, 655, 625 N.W.2d 40 (2000). To obtain relief from a judgment based on newly discovered evidence, the moving party must satisfy the following requirements:

> (1) the evidence, not simply its materiality, must be newly discovered, (2) the evidence must not be merely cumulative, (3) the newly discovered evidence must be such that it is likely to change the result, and (4) the party moving for relief from judgment must be found to have not been able to produce the evidence with reasonable diligence. [Id.]

In this case, the trial court concluded that plaintiff had not satisfied the third and fourth requirements. With respect to the fourth requirement, the trial court concluded that although plaintiff was not obligated to undergo the hand surgery that led to the discovery of the new evidence, it was within his power to do so. The court noted that there were possible tactical reasons for delaying surgery until after trial, because it could have revealed evidence that would have been harmful to plaintiff's case, and ultimately concluded that plaintiff had not met his burden of due diligence.

We conclude that the trial court's determination was not outside the realm of principled outcomes under the facts of the instant case. It is undisputed that it was medically advisable to undergo the repair sooner because the likelihood of a successful outcome was greater the earlier the surgery was performed. In addition, there was no evidence of unusual risks associated with the subsequent surgical procedure. Accordingly, the danger of delay was substantial. Moreover, while plaintiff maintains the delay resulted from his inability to pay for the surgery, it is equally possible he deferred surgery for strategic reasons, namely a higher damage verdict.

We also find that the interest in the finality of judgments supports our decision in this case. We agree that a plaintiff should not be pressured or compelled into obtaining corrective surgery, but neither should a defendant bear the cost-in the form of uncertainty-of the plaintiff's delay. Weighing these competing factors in light of the facts present here, we conclude that plaintiff's delay in obtaining the corrective hand surgery reflected a

**Beard v. Horton, Not Reported in N.W.2d (2010)**

lack of reasonable diligence.

***8** Because we find plaintiff failed to satisfy the fourth requirement of the test for obtaining a new trial based on newly discovered evidence, it is not necessary to determine whether the trial court abused its discretion in finding that plaintiff failed to satisfy the third prong.

Affirmed.

**All Citations**

Not Reported in N.W.2d, 2010 WL 4365883

Footnotes

1   We also disagree with plaintiff's claim that he is entitled to a new trial because a defense investigator's agent engaged in improper contact with plaintiff, contrary to MRPC 4.2 (prohibiting a lawyer from communicating about the subject of the representation with a party represented by another attorney) and MRPC 5.3 (prohibiting a lawyer's agent from participating in conduct that a lawyer may not participate in). The basis for this claim is a brief communication between plaintiff and an agent hired by a defense investigator, which occurred at a bar where plaintiff was working. According to the agent, the communication was initiated by plaintiff, who voluntarily offered advice on how to ride a mechanical bull. Because the evidence indicates that the communication was not initiated by the agent, and further, that plaintiff's advice did not involve a "communicat[ion] about the subject of the representation," MRPC 4.2, there was no violation of the Rules of Professional Conduct.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.